1

2

3

4

5

6

7       UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
                                AT SEATTLE
8

9    OLEAN WHOLESALE GROCERY
     COOPERATIVE, INC., JOHN GROSS AND
10   COMPANY, INC., and MAPLEVALE          No. 2:21-mc-00066 RSL
     FARMS, INC.,
11                                         MOTION OF HAGENS BERMAN
                            Plaintiffs,    SOBOL SHAPIRO LLP, LOCKRIDGE
12                                         GRINDAL NAUEN, P.L.L.P, AND LAEL
            v.                             HENTERLY TO QUASH SUBPOENA
13
     AGRI STATS, INC., BUTTERBALL LLC,
14   CARGILL, INC., CARGILL MEAT           Note on Motion Calendar:
     SOLUTIONS CORPORATION, COOPER         July 3, 2021
15   FARMS, INC., FARBEST FOODS, INC.,
     FOSTER FARMS, LLC, FOSTER POULTRY
16   FARMS, THE HILLSHIRE BRANDS           Oral Argument Requested
     COMPANY, HORMEL FOODS
17   CORPORATION, HOUSE OF RAEFORD
     FARMS, INC., PERDUE FARMS, INC.,
18   PERDUE FOODS LLC, TYSON FOODS,
     INC., TYSON FRESH MEATS, INC. and
19   TYSON PREPARED FOODS, INC.,

20                          Defendants.

21

22

23

24

25

26

27

28

01073711 1562734 V1

1

**TABLE OF CONTENTS**

2
                                                                                  **Pages**

3    I.      INTRODUCTION ..................................................................................................1

4    II.     FACTUAL BACKGROUND...................................................................................3

5    III.    JURISDICTION ......................................................................................................5

6    IV.     ARGUMENT...........................................................................................................6

7            A.      The Subpoena Should Be Quashed Because It Seeks Materials Protected by
                     Attorney Work Product.................................................................................6
8
     V.      CONCLUSION........................................................................................................8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

01073711 1562734 V1

1       Pursuant to Rules 26(c) and 45(d) of the Federal Rules of Civil Procedure, Hagens

2  Berman Sobol Shapiro LLP, Lockridge Grindal Nauen, P.L.L.P. and Lael Henterly (the

3  "Movants"), move this Court to quash the subpoena for documents issued to the Movants and/or

4  for a Protective Order.

5        The May 21, 2021 subpoena for documents were served on behalf of the Defendants

6  Agri Stats, Inc., Butterball LLC, Cargill, Inc., Cargill Meat Solutions Corporation, Cooper

7  Farms, Inc., Farbest Foods, Inc., Foster Farms, LLC, Foster Poultry Farms, The Hillshire Brands

8  Company, Hormel Foods Corporation, House of Raeford Farms, Inc., Perdue Farms, Inc., Perdue

9  Foods LLC, Tyson Foods, Inc., Tyson Fresh Meats, Inc. and Tyson Prepared Foods, Inc.

10  (hereinafter, "Defendants"), should be quashed. The subpoena requires the Movants to disclose

11  materials protected by the attorney work product privilege in violation of Federal Rule of Civil

12  Procedure 45(d)(3)(A)(iii).

13       For the reasons set forth in the accompanying Memorandum, the Movants respectfully

14  request that this Court grant their motion and quash the subpoena for documents or, in the

15  alternative, enter an appropriate Protective Order.

16       Pursuant to Local Rule 37 (a)(1), counsel for the Movants attempted to communicate

17  with multiple counsel from different law firms representing Defendants in an effort to meet and

18  confer regarding the scope of the subpoena. However, the Movants and Defendants were unable

19  to reach an agreement.

20            **I.**     **INTRODUCTION**

21       Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Lockridge Grindal Nauen

22  P.L.L.P. ("Lockridge") are counsel of record for a putative class of direct purchasers in the

23  *Olean Wholesale Grocery Cooperative et al v. Agri Stats, Inc. et al*, No. 1:19-cv-08318 (N.D.

24  Ill.) ("*Turkey*").[1] Prior to filing the complaint in that case, counsel retained On Point

25  Investigations, LLC ("On Point") a private investigation firm, to assist in conducting a factual

26  investigation. On Point's investigation was primarily performed by Lael Henterly ("Henterly"), a

27

28      [1] Minute Entry, June 16, 2020, ECF No. 143.

MOT. TO QUASH SUBPOENA – Case No.

01073711 1562734 V1

-1-

1   licensed private investigator. As part of that factual investigation, On Point and Henterly

2   interviewed confidential witnesses and regularly communicated with counsel regarding the

3   investigation. The subsequently filed complaint contained factual allegations based on the work

4   performed by On Point and Henterly.

5          The Supreme Court has long specifically recognized the important role that investigators

6   play in the adversarial process, and that the attorney work product privilege extends to their

7   work: "attorneys often must rely on the assistance of investigators and other agents in the

8   compilation of materials in preparation for trial. It is therefore necessary that the [attorney work

9   product] doctrine protect material prepared by agents for the attorney as well as those prepared

10  by the attorney himself."[2] Thus, courts routinely hold that materials prepared by investigators,

11  such as summaries of interviews with confidential witnesses, is protected by the attorney work

12  product privilege. *See Hatamian v. Advanced Micro Devices, Inc.*, No. 14-CV-00226-

13  YGR(JSC), 2016 WL 2606830, at *3 (N.D. Cal. May 6, 2016) (Work product protection is not

14  limited to attorneys, either; as long as the documents were created in anticipation of litigation,

15  the doctrine applies to investigators and consultants working for attorneys.) (collecting cases).

16         But contrary to this long-standing precedent, Defendants have issued a subpoena to

17  private investigators retained by Plaintiffs' counsel that seeks almost entirely attorney work

18  product. For example, Defendants' subpoena requests materials such as "all communications

19  with Plaintiffs' Counsel of Record relating to Turkey" and all notes or memoranda relating to the

20  investigation that On Point and Henterly conducted.  Pierce Decl.,[3] Ex. A. This is exactly the

21  kind of material that courts have specifically recognized is protected by the attorney work

22  product privilege. *See In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900,

23  907 (9th Cir. 2004) ("The Supreme Court has held that the work product doctrine applies to

24  documents created by investigators working for attorneys, provided the documents were created

25

26
    ────────────────
        [2] *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

27      [3] "Pierce Decl." refers to the Declaration of Rio S. Pierce in Support of Motion of Hagens Berman Sobol
    Shapiro LLP, Lockridge Grindal Nauen, P.L.L.P. and Lael Henterly to Quash Subpoena, concurrently filed
28  herewith.

    MOT. TO QUASH SUBPOENA – Case No.
                                                    -2-
    01073711 1562734 V1

1    in anticipation of litigation."). And, indeed, production of this material – such as

2    communications between attorneys and investigators that may reveal attorneys' mental

3    impressions and theories - would wreak havoc on the adversarial process, which is exactly the

4    harm that the Supreme Court devised the attorney work product privilege to prevent. *See*

5    *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947) ("Not even the most liberal of discovery

6    theories can justify unwarranted inquiries into the files and the mental impressions of an attorney

7    . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary

8    intrusion by opposing parties and their counsel.")

9        Defendants' subpoena should therefore be quashed because the only relevant materials

10   that it seeks are protected by the attorney work-product privilege.

11                           **II.      FACTUAL BACKGROUND**

12       Lockridge and Hagens Berman are counsel of record for a putative class of direct

13   purchasers in the *Turkey Antitrust* litigation, which was first filed on December 19, 2019. The

14   named plaintiffs in this litigation are Olean Wholesale Grocery Cooperative Inc., John Gross and

15   Company, Inc., and Maplevale Farms Inc. Lockridge is also counsel of record for each of the

16   named plaintiffs in the *In re Broiler Antitrust Litig.*, No. 16-cv-08637 (N.D. Ill.) ("*Broiler*"),

17   which was first filed in September 2, 2016 and the *In re Pork Antitrust Litig.*, 18-cv-1776

18   (JRT/HB) ("*Pork*") which was first filed in June 28, 2018. Hagens Berman is counsel of record

19   for putative classes of end user consumers in both cases as well.

20       A central allegation in both the *Broiler* and *Pork* antitrust litigation matters is that

21   Defendants, chicken and pork manufactures, anticompetitively exchanged with each other highly

22   confidential information regarding their business operations through Agri Stats, Inc., a third

23   party benchmarking service.[4] Public information regarding Agri Stats is extremely limited, but it

24   is known that Agri Stats also offers benchmarking services in the turkey industry.

25

26   _____

     [4] *See In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 766 (D. Minn. 2020) ("Defendants were able to carry out
     this conspiracy in two ways. First, "Defendants exchanged detailed, competitively sensitive, and closely guarded
     non-public information about prices, capacity, sales volume, and demand through their co-conspirator, Defendant
27   Agri Stats."); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 800 (N.D. Ill. 2017) ("Plaintiffs clearly
     allege, however, that the information provided by Agri Stats simply facilitated the conspiracy. It was a tool
28   Defendants used to help implement their conspiracy.").

1    Lockridge and Hagens Berman began investigating the possibility of bringing claims on

2    behalf of turkey purchasers who were harmed by anticompetitive conduct in 2018. Pierce Decl.,

3    ¶ 5. In particular, Lockridge investigated the possibility of bringing claims on behalf of the

4    named plaintiffs that it represented in the *Broiler* and *Pork* litigations for their purchases of

5    turkey. In furtherance of its investigation, Hagens Berman retained On Point in November 2019

6    to conduct a factual investigation of the turkey industry. On Point then used a private

7    investigator, Lael Henterly, in furtherance of that investigation, including conducting

8    confidential witness interviews with former employees of the Defendants. Hagens Berman

9    communicated with On Point and Henterly regarding the investigation.

10    Hagens Berman and Lockridge Grindal subsequently formalized their representation of

11    named plaintiffs Olean Wholesale Grocery Cooperative Inc., and John Gross and Company, Inc.,

12    as class representatives for the *Turkey* antitrust litigation in December 2019.[5] Pierce Decl., ¶ 7.

13    The complaint was filed on December 19, 2019. Pierce Decl., Ex. A. The complaint centered on

14    Defendant turkey manufacturers' anticompetitive usage of Agri Stats to exchange confidential

15    business information between themselves. The complaint included factual allegations based on

16    interviews with three confidential witnesses that detailed Defendants' usage of Agri Stats. The

17    Court denied Defendants' motion to dismiss on October 19, 2020. Plaintiffs identified the three

18    confidential witnesses in their initial disclosures, and subsequently confirmed to Defendants that

19    the confidential witnesses were included in Plaintiffs' initial disclosures. Pierce Decl., ¶ 8. On

20    May 21, 2021, Defendants initiated the process for service of third party subpoenas for On Point

21    and Henterly. Defendants' subpoena to Henterly listed its address as 904 W Highland Drive,

22    Seattle, Washington 98119. Defendants' subpoena requested the following categories of

23    documents (1) all documents relating to the turkey industry and the named Defendants (requests

24    2 & 8); (2) all documents relating to witnesses contacted as part of the investigation (requests 3,

25    4, 5, & 6); and (3) all documents relating to the investigation, including communications with

26

27

28

---

[5] Plaintiff Maplevale Farms was subsequently added as a named class representative through joint stipulation on March 8, 2021.

1  attorneys, notes or memoranda (requests 1, 9 & 10). Defendants' subpoena commanded that

2  documents be produced in Washington, D.C.

3       The Movants and Defendants met and conferred on May 24, 2021 and subsequently

4  exchanged correspondence regarding the extent to which these materials are protected by the

5  attorney work product privilege but were unable to resolve the dispute. Movants and Defendants

6  are at an impasse.  Pierce Decl., ¶ 3.

7                        **III.    JURISDICTION**

8       Federal Rule of Civil Procedure 45(c)(1)(A) states that "a subpoena may command

9  production of documents . . . within 100 miles of where the person resides, is employed, or

10  regularly transacts business in person." As stated on the subpoena, Henterly is located in Seattle,

11  Washington. Thus, compliance may only be required for this subpoena within the Western

12  District of Washington. Consequently, the jurisdiction for filing motions to quash the subpoena

13  is the the Western District of Washington. *See* Fed. R. Civ. P. 45(d)(3).

14       Federal Rule of Civil Procedure 45(c)(2) states that a subpoena may command production

15  of documents, electronically stored information, or tangible things at a place within 100 miles of

16  where the person resides, is employed, or regularly transacts business in person. The subpoena

17  identifies Henterly's location as Seattle, Washington. However, the subpoena requires that

18  Henterly produce documents at 1001 Pennsylvania Avenue, Washington, DC. This place of

19  compliance is significantly more than 100 miles away from where Henterly is located with an

20  estimated distance of approximately 2,758 miles between Seattle, Washington and Washington,

21  DC. Rule 45 (d)(3)(A)(ii) specifically states that a court "must quash" a Rule 45 subpoena if it

22  requires a person to comply beyond the geographical limits specified in Rule 45(c). Therefore, as

23  a threshold matter, the subpoena should be quashed because it requires Henterly to comply

24  beyond the 100-mile distance specified in Rule 45(c).

25

26

27

28

## IV. ARGUMENT

### A. The Subpoena Should Be Quashed Because It Seeks Materials Protected by Attorney Work Product

Rule 26(b)(3) states that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative ("including the other party's attorney, consultant, surety, indemnitor, or agent")." Fed. R. Civ. P. 26(b)(3)(A). The "work product doctrine is distinct from, and broader than, the attorney-client privilege. *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 86 (N.D. Ill. 1992). An attorney holds their own interest in protecting the attorney work product privilege and "the work-product privilege may be invoked by either the client or the attorney" because "an attorney has an independent interest in privacy, even when the client has waived its own claim." *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006.) Therefore, courts recognize that law firms have independent standing to file motions to quash subpoenas that seek attorney work product. *See Matter of Grand Jury Subpoena Duces Tecum Dated Feb. 18, 1988*, 685 F. Supp. 49, 50–52 (S.D.N.Y. 1988) ("The law firm has standing to intervene and join the investigation firm's motion to quash.").

The work product doctrine "shields both opinion and factual work product from discovery." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008). A document should be deemed prepared "in anticipation of litigation" and thus eligible for work product protection under Rule 26(b)(3) if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004).

Here, Defendants' subpoena to Henterly almost exclusively seeks work product materials because On Point and Henterly were specifically retained by Hagens Berman to conduct an investigation into Defendants' anticompetitive conduct in the turkey industry.[6] Thus, all

---

[6] Defendants' broadly written subpoena also includes requests for materials like "All documents relating to the turkey industry" or "all documents relating to Butterball. . . . Literally read, this request may encompass materials

MOT. TO QUASH SUBPOENA – Case No.

01073711 1562734 V1

1    materials in Henterly's possession that are responsive and relevant to Defendants' subpoena were

2    created for potential litigation regarding Defendants' conduct.

3         Courts have repeatedly recognized that these exact type of materials prepared by

4    investigators is protected by the attorney work product privilege. *Alexander v. F.B.I.*, 192 F.R.D.

5    12, 18 (D.D.C.2000) ("The case law dealing with attorneys' investigators shows that they should

6    generally be afforded the same protection as the attorneys for whom they work.") For example,

7    Henterly's interview notes and memoranda regarding communications with confidential

8    witnesses are exactly the kind of opinion work product that courts routinely recognize as

9    protected by the attorney work product privilege.[7]

10        In correspondence prior to filing this motion, Defendants at no point addressed whether

11   they disagreed that these materials were created for use in the litigation. Instead, Defendants'

12   primary apparent justification for the validity of this subpoena is that attorney work product

13   privileges do not attach to any materials that were created in anticipation of litigation if a formal

14   representation agreement with a client had not yet been signed.[8] Despite Plaintiffs' repeated

15   requests, Defendants refused to identify a single case in support of their position.[9]

16        But contrary to Defendants' assertions, courts find attorney work product privilege

17   extends to material that is created before outside counsel is retained so long as the material is

18   created in anticipation of litigation. *See Bahrami v. Price*, No. 1:11-CV-4483-SCJ-AJB, 2013

19   WL 3800093, at *6 (N.D. Ga. July 19, 2013) ("the Court notes that documents and things

20   prepared in anticipation of litigation by a party (or its representative) can be protected work

21

22

23   such as Henterly's Thanksgiving menu or receipts for purchase of Butterball turkey. But these documents, although not attorney work product, are irrelevant to the *Turkey* antitrust litigation.

24   [7] *See, e.g.*, *Hatamian*, 2016 WL 2606830, at *3 ("[A]n investigator at Plaintiffs' counsel's law firm conducted the interviews as part of the effort to draft the complaint in this action—that is, in anticipation of litigation. In short, the interview materials are protected work product.").

25   [8] *See, e.g.*, Pierce Decl., Ex. B (June 4, 2021 Letter from Kass) ("As we explained, however, the work product privilege does not apply unless the work was performed at the request of the named plaintiff. This obviously could not occur if any investigative work was done by OnPoint or Ms. Henterly prior to the named plaintiffs' retention of counsel for purposes of bringing the instant case.").

26

27   [9] *See* Pierce Decl., Ex. C (June 18, 2021 Letter from Kass) ("In your letter and during the meet and confer, you asked defendants to provide plaintiffs with legal research concerning the scope of the work product doctrine. Defendants do not believe that is their burden and, given where the parties are in their negotiations, do not believe an exchange of case law would be productive.")

28

MOT. TO QUASH SUBPOENA – Case No.
-7-
01073711 1562734 V1

1    product; in other words, Plaintiff's lack of an attorney at the time he made the recordings does

2    not mean that the recordings cannot be protected work product."). This is consistent with the

3    clear instructions of the Supreme Court that "the literal language of [Rule 26(b)(3)] protects

4    materials prepared for any litigation or trial as long as they were prepared by or for a party to the

5    subsequent litigation." *Grolier Inc.*, 462 U.S. at 25. Here, the attorney work product of the

6    private investigators was prepared for usage by Plaintiffs, and their representatives, in anticipated

7    litigation.

8         More broadly, Defendants' proposed principle would cause great mischief to the

9    adversarial process – any investigative work that an attorney did prior to signing a representation

10   agreement, such as the assessment of the strength of their potential client's claims or defenses,

11   would be completely unprotected and producible to the other side. This is exactly the harsh result

12   to the adversarial process that the work product privilege was designed to prevent.[10] Indeed, such

13   an outcome would perversely discourage an attorney's ethical duty, prior to filing a complaint, to

14   make a reasonable inquiry that "the factual contentions have evidentiary support or, if

15   specifically so identified, will likely have evidentiary support after a reasonable opportunity for

16   further investigation or discovery." Fed R. Civ. P. 11(b)(3).

17        As the Supreme Court has recognized, the attorney work product doctrine is an "intensely

18   practical one, grounded in the realities of litigation in our adversary system." *Nobles*, 422 U.S. at

19   238. The practical result of Defendants' subpoena would be to give them direct access to the

20   mental processes of their adversary's representatives. Such an outcome should be prevented

21   because it would be completely contradictory to the very reason for the attorney work product

22   doctrine: "providing a privileged area within which [an attorney] can analyze and prepare [their]

23   client's case." *Id.*

## V.    CONCLUSION

25        Movants respectfully request that this Court grant the motion to quash the subpoena.

26

27        [10] *See generally Hickman*, 329 U.S. at 514 ("When Rule 26 and the other discovery rules were adopted, this
     Court and the members of the bar in general certainly did not believe or contemplate that all the files and mental
     processes of lawyers were thereby opened to the free scrutiny of their adversaries. And we refuse to interpret the
28   rules at this time so as to reach so harsh and unwarranted a result.").

MOT. TO QUASH SUBPOENA – Case No.

01073711 1562734 V1

-8-

DATED: June 21, 2021

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO, LLP

By   s/ Shana E. Scarlett
     SHANA E. SCARLETT (*pro hac vice* pending)

Rio S. Pierce (*pro hac vice* forthcoming)
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

W. Joseph Bruckner
Brian D. Clark
Maureen Kane Berg
Simeon Morbey
Steven E. Serdikoff
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401
Telephone: (612) 339-6900
Facsimile:  (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
mkberg@locklaw.com
samorbey@locklaw.com
seserdikoff@locklaw.com

*Attorneys for Movants*

MOT. TO QUASH SUBPOENA – Case No.

-9-

01073711 1562734 V1